IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MICHAEL GOULDIE, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:21-cv-00088-TES** |
| **TRACE STAFFING SOLUTIONS, LLC.,** | |
| *Defendant.* | |

**ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-AUTHORIZED NOTICE**

On behalf of himself and all others similarly situated, Plaintiff Michael Gouldie

moves the Court to conditionally certify this Fair Labor Standards Act collective action

against Defendant Trace Staffing, LLC. [Doc. 17, p. 3]. As a staffing agency, Trace

Staffing employs recruiters—some of which are paid a set salary—to make Internet job

postings, place phone calls, and generally field candidates according to the criteria

established by its customers. [*Id.* at p. 4]. However, Trace Staffing exempts these

"salaried recruiters" from overtime pay, and Plaintiff claims that this exemption

violates the Fair Labor Standards Act, 29 U.S.C. § 207. [*Id.* at pp. 3–4]; [Doc. 1, ¶ 49].

**FACTUAL BACKGROUND**

According to Plaintiff's Complaint [Doc. 1], he worked for Trace Staffing as a

recruiter from June 2016 until October 2018 at its location in Macon, Georgia, and

frequently worked around 55–60 hours each week. [Doc 1, ¶¶ 11–12, 27]; [Doc. 17-1, Gouldie Decl., ¶ 9]. As a recruiter, Plaintiff would call potential employees for placement into companies that contracted with Trace Staffing, and he received a base salary for each day worked. [Doc. 1, ¶¶ 25, 28, 43]. Even though Plaintiff received this salary regardless of the number of hours he worked in a particular day, he didn't receive overtime pay for any hours worked in excess of 40 hours per week. [*Id.* at ¶ 25]. While Plaintiff's position as a salaried recruiter didn't require a college education or an advanced degree, the work he performed was an essential and integral part of Trace Staffing's core business. [*Id.* at ¶¶ 29, 32].

Plaintiff describes his position as primarily technical in nature. [*Id.* at ¶ 29]. Specifically, Plaintiff never had any supervisory or management duties, and to the extent he ever had to make a "decision," it did not require the exercise of independent discretion or judgment. [*Id.* at ¶¶ 36–37]. Instead, Plaintiff only had to apply well-established techniques and procedures, from which he was not permitted to deviate, in order to perform his job duties and evaluate any issues. [*Id.* at ¶¶ 38, 40].

Trace Staffing, on the other hand, paints a little bit of a different picture when it comes to Plaintiff's position. And while the differences between Plaintiff's description of his job and Trace Staffing's description aren't all together relevant to the Court's ultimate ruling, they still warrant some discussion. In its Response [Doc. 19] to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice [Doc. 17],

Trace Staffing claims that Plaintiff "was an Assistant Branch Manager . . . who was[,]"

due to performance issues, "demoted to Staffing Manager in June 2018 and terminated

in October 2018." [Doc. 19, p. 2]. As an Assistant Branch Manager, Plaintiff "was

responsible for all operations within the Macon branch" and served as its point of

contact for Trace Staffing as a whole. [*Id.* at p. 4]. According to Trace Staffing, in

addition to maintaining an excellent relationship with new and existing clients to

ensure staffing goals, Plaintiff had significant duties for recruiting and interviewing

candidates; assessing their qualifications for placement with Trace Staffing's clients; and

when necessary, onboarding those candidates into their respective positions. [*Id.* at pp.

4–5]. Then, once placed into a position, Plaintiff would continue to work with those

individuals to resolve any issues that would arise related to attendance, performance,

pay, and (if needed) termination. [*Id.* at p. 4].

Sure, directives for resolving any and all of these issues may have been detailed

in what Plaintiff labeled "established standards" set by Trace Staffing; therefore, the

differences between how Plaintiff saw his job duties and the extent of his authority

versus how Trace Staffing sees those two things are (in light of the standard that

governs conditional certification) of no consequence. *See, e.g.*, [Doc. 1, ¶ 38]. Thus, as

discussed below, the Court's decision to deny Plaintiff's request isn't because he failed

to show that his job duties were similar to the other Trace Staffing employees he hoped

to invite to this lawsuit. Instead, the Court denies Plaintiff's request because the

materials he submitted to the Court fall short of what is required for a plaintiff to bring a collective action under the Fair Labor Standards Act.

## CONDITIONAL CERTIFICATION
## UNDER THE FAIR LABOR STANDARDS ACT

Relevant here, § 216 of the Fair Labor Standards Act ("FLSA") provides a right of action to the "employee or employees" affected by an employer's FLSA violations for "unpaid overtime compensation." 29 U.S.C. § 216(b).

In order to better manage § 216(b) cases, the Eleventh Circuit suggests a two-step approach. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001). First, the "notice stage" is where "the district court makes a decision—usually based on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Id.* at 1218. To facilitate this opt-in mechanism, district courts "have the power to give . . . notice to other potential members of the plaintiff class" and may exercise that power "under appropriate conditions." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991). This decision—whether to create an opt-in class under § 216(b)—is subject to "a fairly lenient standard" since it isn't based on hard evidence and is "soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219. If the action is conditionally certified, the putative class members are given notice and an opportunity to opt into the action, and it "proceeds as a representative action throughout discovery." *Id.* at 1218.

The second stage of the certification process is "typically predicated by a motion

for 'decertification' by the [employer] usually filed after discovery is largely complete

and the matter is ready for trial." *Id.* At this stage, there is a more extensive and detailed

factual record, and the standard for determining similarity is "less lenient[.]" *Morgan v.*

*Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). At this juncture, the law

places a heavier burden on the plaintiff to satisfy the "similarly situated" determination.

*Id.* If the record shows that the opt-in plaintiffs are not similarly situated, then the

collective action becomes decertified, and the opt-in plaintiffs are dismissed without

prejudice. *Hipp*, 252 F.3d at 1218. If they are similarly situated, the collective action

proceeds to trial. *Id.* Obviously, at this point, we are only dealing with the first step: the

"notice stage" for conditional certification. [Doc. 17, p. 9].

Relying on *Grayson v. K Mart Corporation*, Plaintiff argues that "[f]or an opt-in

class to be created under section 216(b), an employee need only show that he is suing

his employer for himself and on behalf of other employee's 'similarly situated.'" [*Id.* at

p. 7 (quoting *Grayson*, 79 F.3d 1086, 1096 (11th Cir. 1996))]. Plaintiff's argument for this

singular requirement is understandable—but ultimately without merit.

In 1991, the Eleventh Circuit's decision in *Dybach v. State of Florida Department of*

*Corrections* seemed pretty cut and dry: district courts "should satisfy [themselves] that

there are other employees of the [employer] who desire to '[opt in]' and who are

'similarly situated' with respect to their job requirements and with regard to their pay

provisions." 942 F.2d at 1567–68. Thus, under *Dybach*, there are two requirements to maintain a collective action under § 216(b): similarly situated and desire to opt in.

However, almost five years later in *Grayson*, the Eleventh Circuit wrote: "For an opt-in class to be created under section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees 'similarly situated.'" 79 F.3d at 1096. Based on this, Plaintiff's suggestion to the Court that only one thing is required of him to secure conditional certification is reasonable. *See, e.g.*, [Doc. 17, pp. 6–7]. The true takeaway from *Grayson*, however, is the Circuit's heavy discussion of the term "similarly situated" and what it "does not mean." *Morgan*, 551 F.3d at 1259–60 (discussing *Grayson*, 79 F.3d at 1096). So, to the extent Plaintiff interprets *Grayson* as a trend in the Eleventh Circuit that sheds *Dybach*'s "desire" requirement, such an argument lacks merit in light of a case decided in 2018.

In *Mickles on behalf of herself v. Country Club Inc.*, the Eleventh Circuit clearly recaptured *Dybach*'s second requirement that may have dodged the topic of discussion throughout the years. 887 F.3d 1270, 1276 (11th Cir. 2018). "Looking to the FLSA collective action statute, [the Eleventh Circuit has] discern[ed] two requirements." *Id.* The first is a requirement falls to the named plaintiff—he must file on behalf of himself and "other 'similarly situated' employees." *Id.* (quoting *Hipp*, 252 F.3d at 1217). The "similarly situated" employees, or the "opt-in employees," shoulder the second requirement—they must give their "consent in writing to become such a party and such

6

consent [must be] filed in the court in which such action is brought." *Mickles*, 887 F.3d at 1276 (quoting 29 U.S.C. § 216(b)).

The Eleventh Circuit's extraction of these two requirements from § 216(b) in *Mickles* overcomes any argument that *Grayson*, via its in-depth discussion of the standard for determining similarity, somehow unwound *Dybach*'s two-requirement holding. That said, under the Eleventh Circuit's binding precent from *Dybach* and *Mickles*, what is actually required to conditionally certify a collective action under § 216(b) at the first step of the certification process is clear. Again, with focus only on the "notice stage," there are two requirements that must be met to a district court's satisfaction: are the opt-in employees "similarly situated" to Plaintiff and "are there other employees . . . who desire to '[opt in]'" by giving their "consent in writing . . . filed in the court in which [the] action is brought."[1] *Id.*; *Dybach*, 942 F.2d at 1567–68.

Having ironed out the two requirements Plaintiff must satisfy under current Eleventh Circuit precedent, the Court, after consideration of Plaintiff's Complaint, his declaration, and the parties' briefs, denies his request for conditional certification.

---

[1] Although not at first glance, the parties eventually agree that the Court must be satisfied as to both inquires: whether Plaintiff has shown employees who are similarly situated and whether he has shown their desire to join this FLSA collective action. In his Reply brief, Plaintiff argues, and thus concedes that two requirements must be met. To the point, he contends that he has provided evidence that others desire to join this collective action. [Doc. 20, pp. 6–7].

## A.   <u>Similarly Situated</u>

First, Trace Staffing tells the Court that there are a finite number of individuals that Plaintiff seeks to represent—56 to be exact. [Doc. 19, p. 3]. These 56 individuals appear to be "recruiters," but Trace Staffing argues that despite their "recruiter" label, their roles vary. [*Id.*]. Trace Staffing's efforts to defeat conditional certification include pointing out "numerous . . . differences" among and between the "hierarchy" and "distinctions" of the various recruiter roles. [*Id.* at p. 4]. However, it must be remembered that Plaintiff's burden at the "notice stage" is subject to a "fairly lenient standard" since the Court has minimal evidence to consider. *Hipp*, 252 F.3d at 1218. In fact, Plaintiff may make substantial allegations of class-wide FLSA violations. *Montford v. Forestry Mgmt. Serv., LLC*, No. 5:18-CV-19 (MTT), 2018 WL 3715719, at *3 (M.D. Ga. Aug. 3, 2018) (citing *Grayson*, 79 F.3d at 1097).

That said, Trace Staffing's arguments, at this stage, simply ask too much. If the Court were to deny Plaintiff conditional certification based on Trace Staffing's evidence and arguments pertaining to recruiter positions, it would effectively elevate Plaintiff's standard to the more stringent or "less lenient" one required in the second step for managing § 216(b) cases. *Morgan*, 551 F.3d at 1261. Again, Plaintiff need only show that his position was similar, not identical to those of the potential opt-in employees. *Grayson*, 79 F.3d at 1096. On this record, the Court is satisfied as to the first requirement of the "notice stage."

In his declaration, Plaintiff states that "Trace Staffing uses different job titles for [r]ecruiters[]" and that despite these differing titles, they "all perform similar recruiting duties." [Doc. 17-1, Gouldie Decl., ¶ 4]. It'll take more than Trace Staffing's argument that just because its recruiters recruited for different industries—light industrial, skilled trade, office services, healthcare, and hospitality—they are not similarly situated. [Doc. 19, p. 4]. No matter which industry a recruiter served, the recruiter still performed one critical and obvious function—he recruited for Trace Staffing's customers. To parse the nuances and specifics of Trace Staffing's "recruiter" position, at this point, runs afoul of the "fairly lenient standard" to which the Court must adhere. *Hipp*, 252 F.3d at 1218.

Plaintiff's declaration specifically states that there are "other recruiters . . . [who] performed the same or similar job duties and worked numerous hours in excess of 40 hours a week without overtime compensation." [Doc. 17-1, Gouldie Decl., ¶ 11]. Thus, heeding the proper standard applied in the Eleventh Circuit for conditional certification, Plaintiff has, to the Court's satisfaction, met his flexible burden of showing that there are other Trace Staffing employees with similar "job requirements" and "pay provisions." *Hipp*, 252 F.3d at 1218–19; *Dybach*, 942 F.2d at 1567–68.

## B.     Desire to Opt In

What he hasn't satisfied, however, is his burden for the second requirement of the "notice stage." *See Mickles*, 887 F.3d at 1276 (quoting 29 U.S.C. § 216(b)); *see also Dybach*, 942 F.2d at 1567–68. "Certification of a collective action and notice to a potential

class is not appropriate to determine whether there are others who desire to join the

lawsuit." *Linscheid v. Natus Med. Inc.*, No. 3:12-cv-67-TCB, 2012 WL 12861603, at *2 (N.D.

Ga. Nov. 15, 2012) (citation omitted). That is precisely what we have here and is

precisely what *Dybach* insists against. 942 F.2d at 1567–68. Satisfaction that there are

other Trace Staffing employees who desire to opt in has to be made *before* the Court

exercises its "power to give . . . notice to other potential members of the plaintiff class."

*Id.* at 1567.

Here, Plaintiff claims that he "know[s] other Trace Staffing [r]ecruiters who

were[,]" like him, "paid a salary without overtime [compensation]" and "would be

interested in joining this case." [Doc. 17-1, Gouldie Decl., ¶ 13]. Of course, as Plaintiff

reminds the Court, it can't weigh this evidence or assess its credibility at this stage.

[Doc. 20, pp. 6–7 (citing *Hayes v. Willie Lamar Block & Brick Constr.*, No. 5:17-cv-00442-

TES, 2018 WL 6521476, at *3 (M.D. Ga. Oct. 24, 2018))]; *see also Compagone v. DL Pool

Serv., LLC*, No. 2:15–cv–647–FtM–99MRM, 2016 WL 6575087, at *3 (M.D. Fla. Nov. 7,

2016) (citing *Morgan*, 551 F.3d at 1261) ("At this stage of the proceedings, the Court

declines to weigh evidence and make factual determinations."). That said, the Court

accepts what Plaintiff knows. By that same token, it also accepts his "*belie[f]* that . . .

notice" of this collective action "*will guarantee* that the other Trace Staffing [r]ecruiters

will be made aware of th[is] case." [Doc. 17-1, Gouldie Decl., ¶ 14] (emphasis added).

The timing of Plaintiff's guarantee of the other employees' awareness, however, just

isn't coming at the proper time.

Unlike *Hayes v. Singer Company, Inc.*, where the district court declined to exercise

its notice-providing authority under § 216(b) because the evidence was "only counsel's

unsupported assertions that FLSA violations were widespread and that additional

plaintiffs would come from other stores[,]" the Court, in this case, has *Plaintiff's* belief

that other Trace Staffing employees "would be interested in joining this case." 696 F.2d

884, 887 (11th Cir. 1983); [Doc. 17-1, Gouldie Decl., ¶¶ 13–14]. And although the Court

may very well—and does—accept Plaintiff's belief, more is required of him under

current Eleventh Circuit caselaw and what other district courts in this circuit require of

plaintiffs seeking to conditionally certify FLSA collective actions.

In this very district, Plaintiff's declaration is "certainly" considered to be "one

way of showing that potential plaintiffs seek to join" this FLSA collective action.

*Montford*, 2018 WL 3715719, at *3. However, this district also recognizes that

declarations or affidavits are not "necessarily the best, or only, way." *Id.* Instead, "the

most common way a plaintiff can satisfy the *separate, distinct and necessary* 'desire to opt-

in' requirement is by filing a substantial number[2] of consents from other employees

claiming to be similarly situated." *Id.* (citing *Wentworth v. Tacala, LLC*, No. 10-AR-274-S,

2010 WL 11614318, at *3 (N.D. Ala. June 30, 2010)) (emphasis added). Yes, there may be

a finite number of "recruiters" from within Trace Staffing's employ who could ever be a

part of this collective action, but the Court has no way of discerning what percentage of

those 56 individuals may or—in Plaintiff's terms—"would," based on his belief, join

this lawsuit. [Doc. 17-1, Gouldie Decl., ¶¶ 13–14].

Aside from Plaintiff's declaration stating that there are "other" recruiters, all the

Court has to consider is deposition testimony from *another* case against Trace Staffing in

which the deponent, Trace Staffing's corporate representative, testified as to what *her*

job duties included. [Doc. 17-2, Atkins Depo., pp. 4:15–19; 7:16–23]. The only thing this

testimony aids in is helping the Court determine whether Trace Staffing's "recruiter"

positions are similarly situated, and on that, the Court has already said Plaintiff wins.

To be fair, the Court notes that it has granted conditional certification in a

previous case, *Haynes v. Willie Lamar Block & Brick Construction*. 2018 WL 6521476, at *3.

However, the evidence in *Willie Lamar* was simply more than what we have here. For

---

[2] While there is "no magic number" of other employees that must come forward before a court will conditionally certify a FLSA collective action, Plaintiff made no efforts to secure even one declaration, affidavit, or consent to join from a Trace Staffing employee who would be similarly situated and have a desire to join this lawsuit. *Montford*, 2018 WL 3715719, at *3 (citing *Palma v. MetroPCS Wireless, Inc.*, No. 8:13–cv–698–T–33MAP, 2013 WL 6597079, at *3 (M.D. Fla. Dec. 16, 2013)). Submitting a declaration or a formal consent to join as prescribed by § 216(b) of just one other employee could have tipped the outcome of Plaintiff's motion in his favor. *See* 29 U.S.C. § 216(b).

example, there was more than one declaration from employees who "believe[d] other

putative class members would desire to join if the Court grants conditional

certification." *Id.* And, not only was there more than one declaration, the Court's

decision to grant conditional certification was "bolstered by the submission of two

[c]onsents to [j]oin" the FLSA collective action. *Id.* The record in this case, though,

doesn't have those bolstering components. Even though Plaintiff urges the Court to

follow several out-of-circuit district courts which have "grant[ed] conditional

certification on only one or two declarations[,]" the Court will continue to follow the

Eleventh Circuit's guidance as well as the requirements enforced by its sister district

courts. [Doc. 20, pp. 5–6].

At bottom, while Plaintiff believes that notice will "guarantee that the other

Trace Staffing [r]ecruiters will be made aware of th[is] case[,]" the Court needed this

guarantee now—from at least one of those individuals—at the "notice stage." *See*

*Dybach* 942 F.2d at 1567–68 (holding that district courts should satisfy themselves that

there are other employees who desire to opt in *before* issuing notice of a FLSA collective

action); [Doc. 17-1, Gouldie Decl., ¶ 14]. Without more, the Court concludes that it

would be inappropriate to exercise its power under § 216(b) due to the risk of

unnecessarily "stirring up . . . litigation through unwarranted solicitation." *White v.*

*Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (quoting *Brooks v. BellSouth*

*Telecomms., Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995)).

Noting just how little is before the Court, it does not appear that § 216(b) would permit the Court to give an unknown percentage of 56 individuals the opportunity to opt into this FLSA collective action based on a singular sentence in a declaration that hinges on Plaintiff's undetailed "experience and observations [while] working for Trace Staffing[.]" [Doc. 17-1, Gouldie Decl., ¶¶ 12–14]. Had another Trace Staffing employee filed a consent to join or had Plaintiff told the Court just some of what he observed or what percentage of those 56 individuals he believed "would be interested in joining," the outcome of this motion would have likely been different. *See Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236–37 (M.D. Ala. Aug. 27, 2003) (denying conditional certification based on "affidavit evidence that . . . [the plaintiff] believes there are other similarly situated [employees] who would join this lawsuit" and ruling that such evidence did "not even rise to the level of an affirmative . . . statement that similarly situated [employees] exist, since [the plaintiff] states only that he 'believes' these individuals to exist[]").

On this record, there is no other evidence, affidavits, or consents to join from any of the 56 individuals Trace Staffing admits are or were employed as a "salaried recruiter." *See* [Doc. 19, p. 14 (pointing out that "there are no opt-in plaintiffs, no opt-in declarations, and no additional exhibits")]. Without a shred more, the Court isn't satisfied that there are "other employees . . . who desire to '[opt in]'" by giving their

"consent in writing . . . filed in the court in which [the] action is brought."[3] *Mickles*, 887

F.3d at 1276 (quoting 29 U.S.C. § 216(b)); *Dybach*, 942 F.2d at 1567–68.

District courts in the Eleventh Circuit have been consistent on this issue. Careful

to not discredit or weigh the contents of a plaintiff's declaration or affidavit that

"other[s] . . . would be interested in joining" a FLSA collective action, merely stating as

much is not enough because "unsupported expectations that additional plaintiffs will

subsequently come forward" are insufficient. *Horne*, 279 F. Supp. 2d at 1236; *Mackenzie*

*v. Kindred Hosps. East L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). While Plaintiff's

burden at the "notice stage" may be light with respect to its two separate and distinct

requirements, he still nevertheless has a burden. *Montford*, 2018 WL 3715719, at *3.

Accepting his unsupported expectation that he "know[s]" of "other Trace Staffing

[r]ecruiters who . . . would be interested in joining th[is] case[]" would essentially

reduce that already minimal burden to no burden at all. [Doc. 17-1, Gouldie Decl., ¶ 13].

Consequently, Plaintiff fails to meet his burden of satisfying the Court on the second

requirement—showing that there are others who desire to opt in.

## CONCLUSION

As previously stated, there are a plethora of ways through which to show district

courts—to their satisfaction—that there are other employees who desire to opt into a

---

[3] Having reached this conclusion, "the Court's work is done[,]" and there is no need for it to address whether Plaintiff's proposed forms of notice and notice procedure are appropriate. [Doc. 19, pp. 9, 19–21].

FLSA collective action. *See Montford*, 2018 WL 3715719, at \*3, *supra.* Here, Plaintiff's

efforts fell shy of meeting that burden, and with consideration to its "responsibility to

avoid the 'stirring up' of litigation through unwarranted solicitation," the Court must

**DENY** his Motion for Conditional Certification and Court-Authorized Notice [Doc. 17].

*See Brooks*, 164 F.R.D. at 567, *supra.*

        **SO ORDERED**, this 22nd day of October, 2021.

                                                S/ Tilman E. Self, III

                                                **TILMAN E. SELF, III, JUDGE**

                                                **UNITED STATES DISTRICT COURT**